IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

RON VIARREAL,

        Plaintiff,

v.                                                                  No. CIV 02-1319 BB/WDS

CITY OF ESPANOLA, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of a motion for summary judgment filed by Defendants (Doc. 54). Having considered the submissions of the parties and the applicable law, the Court will grant the motion in part and deny it in part.

Plaintiff was employed by Defendant City of Espanola as a law enforcement officer for a number of years. In December 2001 and March 2002, he was passed up for promotion to sergeant, while five other officers were promoted. In addition, Plaintiff was subjected to unpleasant treatment by the Chief of Police, Defendant Guillen, and was denied a $1.00-per-hour raise in pay. On August 16, 2002, Plaintiff submitted his resignation after obtaining a job offer from a different law enforcement agency in a different community. After he resigned, Plaintiff was initially denied payment of all the annual leave he had accrued, and was subjected to a 288-hour limit that allegedly was not enforced against any other officer who had left the force. The additional hours of accrued leave were paid only after Plaintiff obtained an attorney and took legal action. In this case, Plaintiff makes the following claims: (1) he was denied promotion and a raise, and constructively discharged


from his employment, as a result of his political association or failure to associate, in violation of the First Amendment; (2) he was denied promotion and a raise, and constructively discharged from his employment, as a result of his association with his father, in violation of the due process clause of the Fourteenth Amendment; and (3) he was denied promotion and a raise in violation of the equal protection clause of the Fourteenth Amendment. Defendants have moved for summary judgment on these claims.[1]

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze Defendants' motions under these standards, addressing each of the claims raised by Plaintiff.

---

[1] Plaintiff points out that Defendants did not move for summary judgment on his claim that the initial denial of payment of all his accrued leave was a violation of the First and Fourteenth Amendment. Defendants did not address this contention in their reply brief, and the Court therefore assumes it is correct. Any claims Plaintiff has raised, arising out of the annual leave issue, therefore remain extant and are not addressed in this opinion.

**First Amendment Right-of-Association Claim:** It is well-established that the First Amendment protects public employees from being discriminated against due to their political beliefs, affiliation, or non-affiliation, unless their work requires political allegiance. *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999). To defeat a motion for summary judgment on such a claim, a plaintiff must establish a genuine dispute of fact as to two things: (1) the plaintiff's political affiliation, beliefs, and/or non-affiliation were a substantial or motivating factor behind the actions taken against the plaintiff; and (2) the plaintiff's position did not require political allegiance. *Id.* In this case the second factor is not in dispute, as Defendants have not argued that Plaintiff's position required political allegiance.

One procedural matter must be dealt with initially, before the merits of the "motivating factor" issue may be addressed. In the brief in support of summary judgment, Defendants made only one argument concerning this claim. Defendants maintained that the reason Plaintiff was not promoted, and the other five candidates were, was longevity--the other candidates had more experience as law enforcement officers than did Plaintiff. In their reply brief, however, Defendants raised a new argument: that Plaintiff did not present any specific facts showing he actively supported Defendant Lucero's political opponent, and therefore failed to show he engaged in any activity protected by the First Amendment. Plaintiff maintains the Court should not address this issue, since Defendants raised it for the first time in their reply brief. It is true that arguments not made in a party's initial summary-judgment brief, but raised for the first time in a reply brief, can be considered waived by that

3

party. *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002). However, the Court does have an option other than refusing to consider the new argument--the Court may allow the opposing party to file a surreply brief. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). In this case, Plaintiff has filed a surreply brief addressing the new argument, with Defendants' consent and the Court's permission. Therefore, the Court will not deem the argument waived. The Court will, however, take into account the fact that Plaintiff may not have had a full opportunity to address the issue, since the argument was not made in Defendants' initial brief.

In analyzing the evidence presented in this case to date, several principles of law must be kept in mind. First, it does not matter that the political factions alleged to exist in this case were nonpartisan, rather than involving members of different political parties. This is because "there is no meaningful distinction for First Amendment purposes between nonpartisan political alignment and membership in a political party." *Bass v. Richards*, 308 F.3d 1081, 1091 (10th Cir. 2002). Also, there is more than one means by which Plaintiff can establish a genuine issue of fact concerning his First Amendment claim. He can present evidence tending to show he was refused promotion due to his own political activity or beliefs. In the alternative, he can present evidence indicating that some or all of the promotions were given to supporters of a certain political faction, of which he was not a member, regardless of whether he engaged in any political activity opposing or supporting any candidate. *See Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1451, n.5 (10th Cir. 1997) (plaintiff need not establish that he was punished for his own political views, to

4

establish a constitutional violation; it is enough to show the plaintiff was discharged in order to make room for a person with political sponsorship the plaintiff lacked); *Bennis v. Gable*, 823 F.2d 723, 731-32 (3d Cir. 1987) (officers demoted to make room for supporters of successful mayoral candidate stated First Amendment claim; citizen's right not to support a candidate is every bit as protected as his right to support one). In other words, in this case, Plaintiff can prevail if he can show supporters of the political faction in power were promoted, while he, a more deserving non-supporter of that faction, was not. *Id.* He can also prevail if he shows he was affirmatively "punished" for supporting the mayoral candidate who opposed Defendant Lucero in the 2002 mayoral election in Espanola.[2] *Jantzen*.

The relevant evidence presented in the parties' submissions may be summarized as follows.[3] Defendant Lucero, as mayor, frequently involved himself in employment decisions such as hiring and promotion decisions, even when the decisions were supposed to be made only by the city manager and police chief. Lucero, Defendant Guillen, and a former magistrate judge named Judge Maestas were part of the same political faction in Espanola, supported each other in local elections, and occasionally ran on the same slate in such elections.

---

[2] The parties have not addressed the issue presented by the fact that Plaintiff was not the only officer refused promotion; thirteen officers apparently applied for the positions, and only five were promoted. At this stage of the proceedings and without briefing, the Court will not consider whether Plaintiff must prove he would have been promoted, over all the other unsuccessful candidates, in order to prevail on his failure-to-promote claim.

[3] This evidence, of course, is presented in the light most favorable to Plaintiff, ignoring all contrary evidence, as is required in addressing a motion for summary judgment.

Sergeant Gasca, one of the individuals promoted instead of Plaintiff, was also closely aligned with this faction. Gasca had personally intervened when another supporter of the mayor, Mr. Coriz, was stopped for driving under the influence with Maestas as his passenger. When Gasca faced an internal investigation for her role in the incident, Defendant Lucero asked the former police chief, Mr. Salazar, whether the incident would affect her chances of obtaining a promotion. Following the incident and Salazar's affirmative answer to his Gasca-promotion inquiry, Lucero began pressuring Salazar to retire and solicited support from city council members concerning the issue of replacing Salazar. In addition, Lucero and his then-city manager, Defendant Padilla, delayed the promotion process Salazar had begun, told Salazar not to make any recommendations for promotion without meeting with them first, and told him not to interview any candidates for promotion without first meeting with them.

Salazar did decide to retire, and gave ninety days' notice to give the City sufficient time to conduct a nationwide search, as had been done when Salazar was hired. No such search was conducted. Instead, Defendant Guillen, Lucero's political ally, was hired by Lucero at the last minute, just before Salazar's departure date. Guillen then took over the promotion process that had been delayed by Lucero and Padilla. In December 2001, less than three weeks after assuming his position as chief, Guillen recommended for promotion three officers: Gasca, Steve Griego, and Roger Trujillo. Even though the City's personnel manual required the city manager, Padilla, to review the officers' files, he did not do so, but simply rubber-stamped Guillen's selections.

6

Gasca and Griego were part of a clique at the Espanola Police Department, and both Griego and Gasca were supporters of Defendant Lucero in the upcoming election, and were "close" to then-Judge Maestas. Plaintiff was not a supporter of Lucero, and was in fact supporting Lucero's opponent, Mr. Roybal. Plaintiff did not actively campaign for Roybal, but did speak to other police officers about his support for Roybal. In addition, former Chief Salazar was a Roybal supporter, and Plaintiff was considered by at least some officers to be part of a faction within the police department that was loyal to Salazar.

Plaintiff's employment history was vastly superior to Gasca's and Griego's. Both Gasca and Griego had disciplinary problems and many complaints from citizens. Griego had been the subject of successful claims of excessive force. Defendant Guillen knew that Gasca had many problems in her employment history, and Defendant Padilla acknowledged that Plaintiff's personnel file showed him to be a superior officer, while Griego's file indicated he should not be in a supervisory position. Plaintiff's supervisor at the time, as well as former chief Salazar, testified in their depositions that Plaintiff was by far a better candidate for promotion than either Gasca or Griego. The only thing Gasca and Griego had over Plaintiff, for promotion purposes, was longevity. However, longevity was not the sole criterion used for promotion purposes, as some of the promoted officers had less experience than officers who were not promoted.

In March 2002, Rick Martinez and Richard Gallegos were promoted to sergeant. Martinez was part of the same clique at the department that included Griego and Gasca, and was also "close" to Maestas. Plaintiff was also more qualified to be sergeant than was

Martinez, according to Salazar and Plaintiff's former supervisor. By the time Martinez and Gallegos were promoted, a different city manager, Defendant Naranjo, was in place. Naranjo, as Defendant Padilla had done before him, did not review the applicants' personnel files but simply rubber-stamped Defendant Guillen's recommendations.

The foregoing evidence raises genuine issues of fact about the following: (1) whether there were political factions within the Espanola Police Department, with some groups supporting the current administration (including the new police chief) and some not; (2) whether, in making promotion decisions, Chief Guillen and Mayor Lucero made at least some decisions not on the basis of relative qualifications but on the basis of who was a member of the faction supporting the current administration; and (3) whether Plaintiff, who was not a member of the Lucero/Guillen/Maestas faction but was much more qualified for promotion than the three members of that faction who became sergeants, was excluded from consideration due to his failure to belong to that faction. Thus, summary judgment is not appropriate as to Plaintiff's First Amendment political affiliation/non-affiliation claim.[4]

**Fourteenth Amendment Liberty Interest In Familial Association:** Plaintiff argues that another reason he was excluded from consideration for promotion was the fact that his father was a prominent supporter of Defendant Lucero's opponent in the 2002 election, Mr. Roybal. Plaintiff maintains that basing employment decisions on his relationship with his

---

[4]The Court notes Defendants' argument that they should be given qualified immunity from this claim, because they did not violate any clearly established law. The Court finds, however, that it was clearly established that a public officials cannot favor their political supporters over people who did not support them, in making employment decisions. *See Jantzen*.

8

father violates his Fourteenth Amendment right to associate with his family. The viability of Plaintiff's claim in the Tenth Circuit is not a given.

The Court recognizes that at least two circuits have recognized a claim similar to Plaintiff's, albeit under the First Amendment, where a spouse was discharged, in essence, for being married to a person toward whom the spouse's supervisor was antagonistic. *Sowards v. Loudon County, Tennessee*, 203 F.3d 426, 432-33 (6th Cir. 2000); *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999).[5] The law in the Tenth Circuit is not as clear. There is, for example, language in *Owens v. Rush*, 654 F.2d 1370, 1379 (10th Cir. 1982), which could be read to recognize such a claim. *See also Weaver v. Nebo Sch. District*, 29 F.Supp.2d 1279, 1291 n. 10 (D. Utah 1998). In *Griffin v. Strong*, however, the Court recognized that not every act that results in an interference with the right of intimate association is actionable. 983 F.2d 1544, 1548 (10th Cir. 1993). To give rise to a claim such as the one Plaintiff seeks to raise in this case, the defendant must have directed his conduct at the intimate relationship, with knowledge that the conduct will adversely affect that relationship. *Id.; see also Morfin v. Albuquerque Public Schs.*, 906 F.2d 1434, 1440 (10th Cir. 1990) (defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship). There appears to be no evidence in this case that any Defendant acted with the intent to interfere with the relationship between Plaintiff and his father. For that reason, the Court will grant summary

---

[5]It should be noted that these circuits were addressing the freedom of intimate association, and involved a husband-wife relationship. It is not clear whether these circuits, or any other circuit, would recognize a claim such as Plaintiff raises in this case, where an adult child no longer living with his parents claims a violation of his right to associate with those parents.

judgment on this claim. However, the Court recognizes Plaintiff may not have had a full opportunity to brief this issue, due to Defendants' failure to raise and argue it adequately in their initial brief. Therefore, if, prior to or at trial, Plaintiff can point to facts or Tenth Circuit law supporting the existence of such a claim in this case, the Court is open to re-examining this grant of summary judgment. The Court may also have to consider the fact that as to the individual Defendants, qualified immunity may still be an issue even if such a claim should be recognized by the Court.

**Fourteenth Amendment Equal Protection Claim:** Defendants' initial brief addressed this claim simply by stating that Plaintiff has never claimed to be a member of a protected class. Membership in such a class, however, is not the basis of Plaintiff's equal protection claim. Instead, Plaintiff is attempting to raise what is known as a "class of one" equal-protection claim. *See Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing viability of class-of-one equal protection claim).

The Court has questions as to whether the Tenth Circuit would recognize such a claim in this context, involving employment disputes over promotion, a raise, unpleasant treatment by a supervisor, and the payment of accrued annual leave. As another federal district court has stated, "practically every employee, public or private, is bound to be convinced at some point that he or she is getting the short end of the stick," and therefore allowing *Willowbrook*-type class-of-one claims in the public-employment context would create "a bee hive of constitutional litigation..." *Campagna v. Commonwealth of Mass. Dep't of Envt'l Protection*, 206 F.Supp.2d 120, 127 (D. Mass. 2002). Any public employee passed up for

promotion or a raise would have a potential constitutional claim, arguing that he or she was more qualified than the person who received the promotion or raise, and was therefore denied equal protection under the law. This would convert federal (and state) courts into super-personnel departments, potentially reviewing for arbitrariness any and all promotion or raise decisions made by any public employer. *See Clark v. Whiting*, 607 F.2d 634, 638-39 (4th Cir. 1979) (plaintiff professor could not state equal protection claim based on denial of tenure, where his argument was that he received unequal treatment in tenure decisions as compared to other candidates; plaintiff's argument would convert federal courts into super-tenure-committee).

The Court also notes that allowing an equal-protection class-of-one claim in a denial-of-promotion context would allow public employees to bypass the requirement that, to have a Fourteenth Amendment due process claim for an employment-related action, the employee must have been deprived of a property interest. The general rule is that, absent state law creating an absolute entitlement to the promotion, a public employee does not have a property interest in a promotion. *See Meyer v. City of Joplin*, 281 F.3d 759, 761-62 (8th Cir. 2002).

The Court recognizes that class-of-one claims of equal protection have been allowed by the Tenth Circuit in a quasi-employment context (albeit in an unpublished opinion), and that such claims have been allowed by some courts in an employment context. *See Smith v. Eastern New Mexico Medical Center*, 1995 WL 749712 (10th Cir.) (equal protection claim was stated where surgeon and his nurse wife alleged intentional acts of invidious

11

discrimination intended to drive them out of practice and out of community; surgeon lost his hospital privileges, wife lost her laboratory); *see also Hedrich v. Bd. of Regents of the Univ. of Wisconsin*, 274 F.3d 1174, 1183 (7th Cir. 2001) (stating that tenure decision by university is subject to scrutiny under the equal protection clause, and professor who alleged she was class of one had burden of showing that defendants' justification for denying her tenure was irrational and arbitrary). The Court will therefore not grant summary judgment on this claim at this time. Instead, the Court will allow the parties to submit short written briefs, prior to trial, addressing the following issue: whether an equal protection class-of-one claim should be allowed, to challenge employment decisions such as those made in this case--decisions to promote, to give raises, to treat unfairly in general, and to pay or refuse to pay a benefit. These briefs should also address the question of whether the law regarding such a claim was clearly established, so as to avoid a defense of qualified immunity.

**Constructive Discharge:** The Court notes first of all that the issue of constructive discharge in this case is not really a separate claim, but is more like an issue of damages. In other words, if there was no constitutional violation causing the constructive discharge, Plaintiff cannot recover even if he was constructively discharged. If a constitutional violation did occur, and that violation caused a constructive discharge, Plaintiff is entitled to the additional damages caused by his resignation as an Espanola law enforcement officer.

The Court also notes that Plaintiff relies heavily on *Woodward v. City of Worland*, 977 F.2d 1392, 1402 (10th Cir. 1992). Undoubtedly this is because *Woodward* was extremely generous in allowing a constructive-discharge claim to survive summary judgment;

the plaintiffs in that case claimed defendants had not included them in conversations, not invited them to meetings, laughed as they passed by, segregated the dispatchers from the officers, and launched a drug investigation. While expressing "considerable doubt" as to whether these acts were so "severe and intolerable that a reasonable person would have no alternative except to resign," the Tenth Circuit held this question was a matter for the jury, not summary judgment. Subsequent Tenth Circuit cases, while not overruling *Woodward*, have been much more willing to uphold a grant of summary judgment eliminating a constructive-discharge claim from a case. *See, e.g., Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (plaintiff suffered an extended period of intimidating behavior by supervisors, lower performance evaluations, and repeated denials of his requests to transfer; court held plaintiff had not shown he was left with no choice but to resign).

In this case, Plaintiff points to the following evidence in support of his claim that he was constructively discharged: (1) he was denied promotion twice, while other applicants who were much less qualified, but were political allies of the police chief, were promoted; (2) his request for a raise of $1.00 per hour was denied; (3) two officers hired after he became a detective were paid more than he had been receiving as a patrol officer; (4) after the second promotion decision, Chief Guillen became very cold toward him, ignored him completely while talking to other officers, and gave him the silent treatment when they passed in the hallway or ran into each other elsewhere; (5) in a meeting in July, Chief Guillen made an extremely sarcastic remark about Plaintiff and his failure to contribute anything to the Espanola Police Department; (6) as a result of this treatment by Chief

Guillen, Plaintiff suffered emotional stress and resulting physical ailments; and (7) Plaintiff accepted an offer from the Santa Fe County Sheriff's department, which paid less than he was earning and required him to commute an hour per day, because he felt he had to leave the Espanola Police Department.

Again, the Court has severe doubt that, even viewed in the light most favorable to Plaintiff, the above facts are such that a reasonable person would have felt he had no choice but to resign his employment. The Court notes Plaintiff did not resign until he had obtained a different job, albeit at lower pay. Defendants' failure to promote Plaintiff, standing alone, is not sufficient to constitute a constructive discharge. *See Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998) (unless employer has an up-or-out policy, so denial of promotion can be seen as career-ending, the denial cannot comprise a constructive discharge). The promotion denials here were coupled with cold and unpleasant treatment by Plaintiff's superior, as well as a humiliating remark at a meeting, which hardly seems sufficient to give an employee no choice but to quit. When the arbitrary denial of the raise request is thrown in, however, as well as the willingness to pay much less experienced new hires more money than Plaintiff had been earning after six or seven years with the Department, the humiliation factor increases, as well as the likelihood that Plaintiff would never be treated fairly as long as Guillen remained Chief. With some misgiving, but recognizing *Woodward's* admonition that constructive discharge questions are not normally amenable to disposition at the summary-judgment stage, the Court will not at this time eliminate the constructive-discharge issue from this case. The Court will remain open,

however, to the possibility of refusing to submit the matter to the jury, should the evidence at trial prove inadequate.

**Conclusion:** Based on the foregoing, the Court will grant summary judgment on Plaintiff's Fourteenth Amendment claim of interference with his liberty interest to associate with his family. The Court will deny summary judgment on the other claims raised in this case.

## ORDER

A Memorandum Opinion having been entered in this case, it is hereby ORDERED that Defendants' motion for summary judgment (Doc. 54) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 21st day of November, 2003.

_____
BRUCE D. BLACK
United States District Judge


**ATTORNEYS**:
**For Plaintiff**:
Richard Rosenstock
Daniel Yohalem

**For Defendants**:
R. Galen Reimer